Not For Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YANK C. MCLEOD, JR.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>N.J. DEP'T OF CORR., et al.,<br><br>　　　　Defendants. | Civil Action No. 19-8379 (ES) (CLW)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiff Yank C. McLeod, Jr. ("Plaintiff"), a civil detainee confined at the Special Treatment Unit ("STU") in Avenel, New Jersey at the time of filing, has submitted a Complaint alleging violations of his civil rights by various prison officials. (D.E. No. 1, Complaint ("Compl.")). At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court will dismiss the Complaint in its entirety.

**I.　BACKGROUND**

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, against defendants New Jersey Department of Corrections[1]; J. Slaughter, Administrator of the Special Treatment

---

[1] The Department of Corrections is not a person under § 1983 and, therefore, any claims against it are dismissed with prejudice. *See Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (explaining that a state department of corrections is not a person under § 1983); *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir.

Unit; Marcus O. Hicks, Acting Commissioner of the New Jersey Department of Corrections; A. Ramos, Senior Corrections Officer; and J. Renereno, Senior Corrections Officer (collectively, "Defendants"). The following factual allegations are taken from the Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

On or about August 14, 2018, Plaintiff was transported by defendants Ramos and Renereno from the STU to Rutgers University Hospital, for an appointment with an optometrist. (Compl. ¶ 26). Both of Plaintiff's hands were cuffed to a waist-chain, and his ankles/feet were shackled with short leg irons. (*Id.* ¶ 27). After the appointment, defendants Ramos and Renereno were escorting Plaintiff down a flight of stairs. (*Id.* ¶ 28). Neither defendant Ramos nor defendant Renereno had "any handhold on the person or of the clothing of Plaintiff while they were descending the stairs." (*Id.* ¶ 29). While descending the staircase, Plaintiff's legs became entangled in the chains of the leg irons and, as result, he fell down the flight of stairs. (*Id.* ¶¶ 30–31). Plaintiff's left knee was broken in three places and required the surgical implant of metallic pins and rods inside his leg/knee. (*Id.* ¶ 38). The injury to his knee caused him severe pain for several months, and he has been required to go through substantial rehabilitation. (*Id.* ¶¶ 39–41).

Plaintiff seeks declaratory, injunctive and monetary relief. (Compl. ¶ 120).

## II. LEGAL STANDARDS

### A. Standards for a *Sua Sponte* Dismissal

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those

---

2012) (same).

civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915 because Plaintiff is proceeding *in forma pauperis*.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[2] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (emphasis added) (citation omitted).

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *see also Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

B. **Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**III. Analysis**

A. **Failure to Protect**[3]

The Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The appropriate standard for a Fourteenth/Eighth Amendment failure-to-protect claim is whether the defendant demonstrated "deliberate indifference" for the plaintiff's health and safety. *See id.* at 837; *see also A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 587 (3d Cir. 2004) (applying the same failure-to-protect standard for both the Eighth and Fourteenth Amendment claims); *Thomas v.*

---

[3] The same analysis used for Plaintiff's § 1983 claims applies to his claims under the New Jersey Civil Rights Act and New Jersey Constitution. *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 245 n.4 (3d Cir. 2016) ("[I]t appears undisputed that [p]laintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as . . . [the] federal causes of action [under Section 1983].").

4

*Cumberland Cty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("This Court has applied the same standard to a failure-to-protect claim under the Fourteenth Amendment as under the Eighth Amendment."). "'Deliberate indifference' is a subjective standard whereby 'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Harvey v. Gloucester Cty. Jail*, No. 18-1797, 2018 WL 4735738, at *3 (D.N.J. Oct. 2, 2018) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). It is not enough that an officer "should have known of the risk"; the officer must have had actual knowledge. *See Beers Capitol*, 256 F.3d at 133. A plaintiff may, however, demonstrate that "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Here, the allegations against defendants Ramos and Renereno do not state a constitutional claim. While Plaintiff states that his "hands were cuffed to a waist-chain and his ankles/feet was [sic] shackled with short leg irons, [which rendered him] practically immobile," there are no allegations to suggest that these defendants were aware of a risk to Plaintiff when descending down the stairs and were deliberately indifferent to that risk. Plaintiff does not allege that they knew he had difficulty walking and would be unable to reach a railing, or that he otherwise informed them that he could not safely climb down the stairs. In fact, Plaintiff states that he did not fall until his legs became entangled in the chains of the leg irons, thereby suggesting that he was able to climb down the stairs until that occurred. (Compl. ¶ 30). This lends further support to the fact that defendants were not aware of the risk Plaintiff faced. At best, Plaintiff has alleged negligence on the part of these officers for failing to have a "secure handhold" on him while he climbed down the stairs. *See*, *e.g.*, *Lark v. Dillman*, No. 13-335, 2013 WL 1207467, at *6 (M.D. Pa. Mar. 5, 2013) (failure to assist handcuffed and shackled inmate down the stairs is at best negligence). He

has not alleged facts to suggest that they were deliberately indifferent.[4] Therefore, this claim will be dismissed without prejudice.

### B. Supervisory Liability

At the outset, Plaintiff's claims for supervisory liability fail because such a claim requires an underlying constitutional violation, which, as discussed above, is not present here. *See Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) (quoting *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (a claim for supervisory liability "necessarily includes as an element an actual violation at the hands of subordinates")).

These claims also fail because Plaintiff fails to allege sufficient facts to proceed. Personal involvement by a defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of respondeat superior. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330–31 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Hence, there are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy,

---

[4] To extent Plaintiff is raising a Fourteenth Amendment claim alleging that Defendants failed to exercise "professional judgment" required by *Youngberg v. Romeo*, 457 U.S. 307, 322–323 (1982), that claim would also fail. "[I]t is not clear that the rights of sexually violent predators are coextensive with others who are civilly detained," *see Aruanno v. Johnson*, 683 F. App'x 172, 175, n.1 (3d Cir. 2017), however, even assuming the *Youngberg* standard applies to Plaintiff, negligence is still not sufficient to state a constitutional violation, *id.* at 175. *See also Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1143 (3d Cir. 1990) (citing *Davidson v. Cannon*, 474 U.S. 344 (1986) and *Daniels v. Williams*, 474 U.S. 327 (1986)).

practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

In *Barkes v. First Correctional Medical, Inc.*, the Third Circuit reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable under § 1983 for implementing deficient policies. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), reversed on other grounds by *Taylor v. Barkes*, 575 U.S. 822 (2015) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Under *Sample*, to find that a supervisor acted with deliberate indifference as a policymaker,

> the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes*, 766 F.3d at 330.

Failure to train or supervise claims "are generally considered a subcategory of policy or practice liability." *See Barkes*, 766 F.3d at 316. A failure to train claim requires a plaintiff to "identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur."

7

*Palakovic v. Wetzel*, 854 F.3d 209, 233 (3d Cir. 2017) (internal quotation marks and citations omitted).

Deliberate indifference in the supervisory context may be demonstrated by "(i) showing that the supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff[']s, or (ii) showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the four-part test is met." *Beers-Capitol*, 256 F.3d at 136–37 (citing *Sample*, 885 F.2d at 1118).

Here, Plaintiff has failed to allege sufficient facts to state a claim against defendants Hicks and Slaughter. He alleges these defendants "failed to enforce relevant practices, customs, policies, and procedures of the STU regarding the transporting of residents. Such failure played an affirmative part in the alleged misconduct of defendants Ramos and Renereno." (Compl. ¶ 36). He further alleges:

> The policy or procedures of Defendants Slaughter and Hicks to chain Plaintiff to his waist and shackle his legs, as followed by Defendants Ramos and Renereno, which permitted Plaintiff to free-fall down the stairs, had created an unreasonable risk of a constitutional violation. By virtue of Defendants Slaughter's and Hicks' employment and personal knowledge, they were aware that the policy to chain Plaintiff's hands to his waist and shackle his legs with chains, at certain times, created an unreasonable risk, especially while navigating a stairwell.

(Compl. ¶¶ 72, 73).

However, while Plaintiff alleges that defendants Hicks and Slaughter violated his constitutional rights by implementing a policy to chain Plaintiff's hands to his waist and shackle his legs, even while descending a staircase, he also stated in the Complaint that "while being escorted down the staircase, defendants Ramos and Renereno were supposed to have a secure

8

handhold of Plaintiff." (Compl. ¶ 32). That factual allegation suggests the custom or policy required defendants Ramos and Renereno to hold onto Plaintiff while descending the stairs and contradicts the allegation that Defendants Slaughter and Hicks instituted a policy which created an unreasonable risk of a constitutional violation. Moreover, Plaintiff fails to provide any facts to suggest past occurrences of injuries like the Plaintiff's or to otherwise support deliberate indifference. *See Beers-Capitol*, 256 F.3d at 136-37. Because Plaintiff has failed to allege sufficient facts under *Iqbal*, this claim will be dismissed without prejudice.

### C. Denial of Treatment

Due to the injuries he sustained during his fall, Plaintiff alleges that he was prevented from meaningfully attending a process group for receiving sex offender specific treatment, which has delayed his release into the community. (Compl. ¶¶ 89, 90). Based on that allegation, Plaintiff raises a substantive due process claim against defendants Ramos, Renereno, Slaughter and Hicks. While Plaintiff is correct that denial of treatment for an SVP can, in certain circumstances, state a Fourteenth Amendment due process claim, *see Leamer v. Fauver*, 288 F.3d 532, 545–46 (3d Cir. 2002), Plaintiff has not alleged any facts to suggest that these defendants were involved in any decision to prevent Plaintiff from obtaining his treatment. Because personal involvement is required to state a § 1983 claim, *see Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988), this claim must be dismissed in its entirety.

### IV. CONCLUSION

For the foregoing reasons, the Complaint will be dismissed *without prejudice* in its entirety pursuant to 28 U.S.C. § 1915 for failure to state a claim upon which relief may be granted.[5]

---

[5] To the extent the Complaint raises claims under New Jersey state law, the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental

Because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file an amended complaint.[6] An appropriate Order accompanies this Opinion.

<u>s/Esther Salas</u><br>
**Esther Salas, U.S.D.J.**

---

jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction).

[6] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases); *see also* 6 CHARLES ALAN WRIGHT ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. *Id.*