**Not For Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| YANK C. MCLEOD, JR., <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY DEP'T OF CORR., *et al.*, <br><br> Defendants. | Civil Action No. 19-8379 (ES) (CLW) <br><br> MEMORANDUM OPINION & ORDER |

**MCNULTY, DISTRICT JUDGE**

Before the Court is plaintiff Yank McLeod's motion seeking relief from the Court's January 24, 2020 Opinion and Order dismissing his Complaint on screening pursuant to 28 U.S.C. § 1915. (DE 5).[1] For the reasons that follow, the Motion is denied.

### I. BACKGROUND

Plaintiff is a civil detainee confined at the Special Treatment Unit ("STU") in Avenel, New Jersey pursuant to the Sexually Violent Predator ("SVP") Act.

---

[1] Citations to the record will be abbreviated as follows:

    Complaint = Plaintiff's complaint, DE 1

    McLeod Cert. = Plaintiff's certification in support of his Motion, DE 5-2

    Motion = Plaintiff's motion for relief pursuant to Federal Rule of Civil Procedure 60(b), DE 5

    Opinion = The Court's January 24, 2020 Opinion dismissing the Complaint without prejudice, DE 3

(Complaint at 2). In his Complaint, Plaintiff alleges that on or about August 14, 2018, he was transported by defendants Ramos and Renereno from the STU to Rutgers University Hospital for an appointment with an optometrist. (*Id.* ¶ 26). Both of Plaintiff's hands were cuffed to a waist-chain and his ankles and feet were shackled with short leg irons. (*Id.* ¶ 27). After the appointment, defendants Ramos and Renereno were escorting Plaintiff down a flight of stairs. (*Id.* ¶ 28). Neither Ramos nor Renereno had "any handhold on the person or of the clothing of Plaintiff while they were descending the stairs." (*Id.* ¶ 29). While descending the staircase, the Plaintiff's legs became entangled in the chains of the leg irons and, as result, he fell down the flight of stairs. (*Id.* ¶¶ 30–31). Plaintiff's left knee was broken in three places and required the surgical implant of metallic pins and rods inside his leg/knee. (*Id.* ¶ 38). The injury to his knee caused him severe pain for several months, and he has been required to go through substantial rehabilitation. (*Id.* ¶¶ 39–41). Plaintiff seeks declaratory, injunctive and monetary relief. (*Id.* ¶ 120).

    The Complaint purports to raise the following claims:

> COUNT I ASSERTED, PURSUANT TO 42 U.S.C. § 1983, AGAINST DEFENDANTS RAMOS AND RENERENO, FOR VIOLATING PLAINTIFF'S RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION (*Id.* ¶¶ 48-56)
>
> COUNT II ASSERTED, PURSUANT TO 42 U.S.C. § 1983, AGAINST DEFENDANTS RAMOS AND RENERENO, STEMMING FROM VIOLATING PLAINTIFF'S RIGHTS UNDER THE DUE PROCESS

CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (*Id.* ¶¶ 57–63)

COUNT III ASSERTED, PURSUANT TO 42 U.S.C. § 1983, AGAINST DEFENDANTS SLAUGHTER AND HICKS FOR VIOLATING PLAINTIFF'S RIGHTS UNDER THE SUPERVISORY LIABILITY CLAUSE OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION (*Id.* ¶¶ 64–80)

COUNT IV ASSERTED, PURSUANT TO 42 U.S.C. § 1983, AGAINST DEFENDANTS SLAUGHTER AND HICKS FOR VIOLATING PLAINTIFF'S RIGHTS UNDER THE SUPERVISORY LIABILITY CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (*Id.* ¶¶ 81–86)

COUNT V ASSERTED, PURSUANT TO 42 U.S.C. § 1983, AGAINST DEFENDANTS RAMOS, RENERENO, SLAUGHTER, AND HICKS FOR VIOLATING PLAINTIFF'S DUE PROCESS RIGHT TO RECEIVE SEX OFFENDER SPECIFIC TREATMENT UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (*Id.* ¶¶ 87–93)

COUNT VI ASSERTED, PURSUANT TO 42 U.S.C. § 1983, AGAINST DEFENDANTS RAMOS, RENERENO, SLAUGHTER, AND HICKS FOR VIOLATING PLAINTIFF'S PATIENT RIGHTS UNDER THE COMMON LAW (*Id.* ¶¶ 94–101)

COUNT VII ASSERTED, PURSUANT TO THE NEW JERSEY CONSTITUTION, AGAINST DEFENDANTS RAMOS, RENERENO, SLAUGHTER, AND HICKS FOR VIOLATING PLAINTIFF'S RIGHTS UNDER ARTICLE I, PARAGRAPH 1 (*Id.* ¶¶102–110)

COUNT VIII ASSERTED, PURSUANT TO THE NEW JERSEY CONSTITUTION, AGAINST DEFENDANTS RAMOS, RENERENO, SLAUGHTER, AND HICKS FOR VIOLATING PLAINTIFF'S RIGHTS UNDER ARTICLE I, PARAGRAPH 21 (*Id.* ¶¶ 112–119)

On January 24th, 2020, the Court dismissed the Complaint in its entirety, finding that Plaintiff failed to state a claim under the Eighth or Fourteenth Amendments because, at best, he had alleged ordinary negligence by the two correctional officers, but not a constitutional violation. (Opinion at 4–6). The Court also dismissed the corresponding New Jersey Civil Rights Act and New Jersey Constitutional claims for the same reasons. (*Id.* at 4 n. 3). The Court next dismissed the supervisory liability claims because Plaintiff had failed to allege an underlying constitutional violation and also failed to allege sufficient facts to suggest deficient policy making. (*Id.* at 6-9). Finally, the Court dismissed the claim against all defendants for denial of sex-offender-specific treatment, because he failed to allege that they were personally involved in any decision to prevent him from receiving such treatment. (*Id.* at 9). The Court declined to exercise supplemental jurisdiction over any other remaining state law claims. (*Id.* at 9–10 n.5).

Thereafter, Plaintiff filed this Motion for relief from that earlier order pursuant to Federal Rule of Civil Procedure 60(b). (DE 5). In support of his Motion, Plaintiff argues that the Court erred in applying the Eighth Amendment standard, which applies to prisoners, rather than the Fourteenth Amendment, which applies to persons committed as sexually violent predators. (McLeod Cert. ¶¶ 7–12). He further argues that if discovery reveals that there are insufficient policies regarding the holding of individuals while descending stairs, defendants Hicks and Slaughter would be liable. (*Id.* ¶ 13). He argues

4

that the Court's decision is contradicted by another screening opinion from this district, *Grohs v. Lanigan*, Civil Action Number 16-7083, which the Court "might not have been aware of." (*Id.* ¶¶ 20 & 23). Finally, Plaintiff argues that the Court incorrectly screened the Complaint under the Prison Litigation Reform Act ("PLRA") because he is not a "prisoner." (*Id.* ¶ 21).

## II. LEGAL STANDARD

"Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure." *Dubler v. Hangsterfer's Labs.*, No. 09-5144, 2012 WL 1332569 at *3 (D.N.J. Apr. 17, 2012) (citing *United States v. Compaction Sys. Corp.*, 88 F.Supp.2d 339, 345 (D.N.J.1999)). "Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), or as a motion for relief from judgment or order under Federal Rule of Civil Procedure 60(b)." *Id.* (citing *Compaction Sys. Corp.*, 88 F.Supp.2d at 345). In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i).[2]

A party seeking to persuade the court that reconsideration is appropriate bears the burden of demonstrating one of the following: "(1) an intervening

---

[2] Although Plaintiff filed his motion pursuant to Rule 60(b), the Court's dismissal of the Complaint without prejudice was not a final judgment. The Court therefore evaluates the motion as one for reconsideration pursuant to Local Rule 7.1(i). That decision works to plaintiff's advantage; the threshold for relief from a non-final order is somewhat lower, in that the court always retains the discretion to correct itself until a final order is entered. The earlier order was entered by Judge Salas, but the standard does not change as a result of the reassignment of this motion to me. *See Gillon v. Ting*, No. 12-07558, 2014 WL 1891371, at *1 (D.N.J. May 9, 2014) (applying the same reconsideration standards notwithstanding reassignment).

5

change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted); *see also Crisdon v. N.J. Dep't of Educ.*, 464 F. App'x 47, 49 (3d Cir. 2012) ("The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence.") (internal citation omitted).

### III.  ANALYSIS

As stated by the Supreme Court, the Due Process Clause of the Fourteenth Amendment governs a conditions-of-confinement claim for an involuntarily committed patient. *See Youngberg v. Romeo*, 457 U.S. 307, 324-25 (1982). The Fourteenth Amendment mandates that civilly committed individuals may not be subjected to conditions that amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Southerland v. Cnty. of Hudson*, 523 F. App'x 919, 921 (3d Cir. 2013).

In *Youngberg v. Romeo*, 457 U.S. 307 (1982), the Supreme Court addressed "the substantive rights of involuntarily committed mentally retarded persons under the Fourteenth Amendment to the Constitution." *Id.* at 315. Such persons, it held, retain substantive liberty interests in adequate food, shelter, clothing, and medical care, *id.*, as well as in safety, freedom of movement, and minimally adequate or reasonable training to ensure safety and

freedom from undue restraint, *id.* at 317–19. Those interests, however, are not absolute. *Id.* at 319–20. Balancing the interests of the state against the rights of involuntarily committed mentally ill persons to reasonable conditions of safety and freedom from unreasonable restraints, the Court adopted a professional-judgment standard: "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id.* at 321. Thus, even when treatment decisions violate a protected liberty interest, "the [treatment] decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323.

The Third Circuit has equivocated as to whether the *Youngberg* professional judgment standard applies to failure-to-protect claims brought by SVPs. In *Aruanno v. Johnson,* 683 F. App'x. 172, 173 (3d Cir. 2017), the plaintiff alleged that Steven Johnson, Superintendent of the STU, and Gary Lanigan, Commissioner of the New Jersey Department of Correction failed to protect him from an assault by another resident, J.Z., who had recently been sentenced to prison, despite their notice of J.Z.'s alleged threats against plaintiff. *See id.* Because the plaintiff relied on the deliberate indifference standard on appeal, the court questioned whether the professional judgment

7

standard applied to plaintiff's failure-to-protect claim and noted as follows: "We note that the plaintiff in *Youngberg* was committed because of mental infirmities, while sexually violent predators 'have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others.' . . . It is not clear that the rights of sexually violent predators are coextensive with others who are civilly detained." *See id.* at 175 n. 1 (internal citation omitted) (reversing and remanding for trial court to determine the correct standard).

As stated above, Plaintiff specifically raised an Eighth Amendment claim in his Complaint. (*See* Complaint ¶¶ 48–56). In light of that fact, as well as the Third Circuit's decision in *Aruanno* indicating it is not clear what standard should be applied to claims by civilly committed sexually violent predators, the Court addressed his Eighth Amendment claim as raised. In the alternative, however, the Court addressed his allegations under the Fourteenth Amendment. Judge Salas concluded that, whether considered under the deliberate indifference or professional judgment standard, Plaintiff had alleged no more than negligence and therefore had not set forth a constitutional claim. (Opinion at 4–6 & n.4).

Accordingly, to the extent Plaintiff seeks reconsideration because the Court failed to address his allegations under *Youngberg*'s professional

8

judgment standard, his request is denied.[3]

With regard to defendants Hicks and Slaughter, Plaintiff appears to argue that discovery may reveal that they failed to properly implement and/or enforce policies which led to his injury at the hands of the correctional officers. (McLeod Cert. ¶ 13). Plaintiff is not now expected to possess the evidence to support his claim, but he is required to *plead* sufficient facts to "state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To speculate that discovery might uncover a claim against these individuals is insufficient grounds for reconsideration of the Court's prior Opinion.

Next, Plaintiff suggests that Judge Salas overlooked a decision by another judge in this district,[4] *Grohs v. Lanigan*, Civil Action Number 16-7083, because that decision is allegedly in conflict with this Court's screening Opinion. (McLeod Cert. ¶ 20). In the *Grohs* case, the SVP-plaintiff alleged that a John Doe corrections officer slapped him in the face and ordered him to comply with a search. *Grohs v. Lanigan*, No. 16-7083, 2019 WL 1500621, at *10 (D.N.J. Apr. 5, 2019). When a disturbance erupted with another resident, the same corrections officer suddenly slammed plaintiff to the cement floor while

---

[3] The Court further notes that the professional judgment standard applies only to "professional decisionmakers." It does not appear that, as corrections officers, defendants Ramos and Renereno would be considered such and therefore only a deliberate indifference standard would apply to their actions. *See Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990) (citing *Youngberg*, 457 U.S. at 323 n. 30).

[4]   Me, as it happens. The connection is coincidental.

9

his hands were restrained behind him, preventing him from catching himself or shielding his face. *Id.*

Certainly, the facts alleged by plaintiff in the *Grohs* case are materially different from those alleged in this matter. While both involve restraints and subsequent injury, the corrections officer in *Grohs* is alleged to have purposely "slammed" Mr. Grohs to the ground, causing his injuries. Here, there are no allegations that the officers pushed, slammed or otherwise took action to cause Plaintiff's fall down the stairs. Rather, the officers were allegedly careless in supporting the Plaintiff while he was descending the stairs, and he fell as a result. There is no conflict in applying the Eighth or Fourteenth Amendment standard to find that the facts of *Grohs* were sufficient to state a claim, but the facts in this case are not. Citation of the *Grohs* decision, even assuming it was overlooked, does not warrant reconsideration of the Court's prior dismissal.

Finally, Plaintiff alleges that the Court improperly screened his Complaint under the PLRA, despite the fact that he is not a prisoner. (McLeod Cert. ¶ 21). However, as clearly stated in the Court's Opinion and accompanying Order (Opinion at 3 & 9; Order at 1), the screening and dismissal were conducted under the authority of 28 U.S.C. § 1915(e)(2)(B), which applies to all individuals who are proceeding *in forma pauperis*, not just to prisoners. *See, e.g., Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 n. 19 (3d Cir. 2002) (non-prisoner indigent plaintiffs are "clearly within the scope

of § 1915(e)(2)").[5] Accordingly, Plaintiff's request for reconsideration on this basis is also denied.

### IV.   CONCLUSION

For all these reasons, Plaintiff's motion for reconsideration is denied. Because Plaintiff may be able to state one or more claims for relief pursuant to 42 U.S.C. § 1983, the Court will provide him a final opportunity to amend his Complaint.

### ORDER

Accordingly, IT IS, this 23d day of November 2020,

**ORDERED** that the Clerk of the Court REOPEN this matter for the purpose of entering this Opinion and Order; and it is further

**ORDERED** that Plaintiff's Motion (DE 5) is DENIED; and it is further

**ORDERED** that, after entering this Opinion and Order, the Clerk of the Court ADMINISTRATIVELY TERMINATE this action; and it is further

**ORDERED** that Plaintiff may seek to reopen this matter by submitting an amended complaint within 45 days of the date of this Order which cures the deficiencies in his federal claims as identified in the Court's January 24th Opinion and herein; and it is further

---

[5] The non-precedential Third Circuit decision that Plaintiff cites in support of this argument is inapposite. *See Aruanno v. Maurice,* 790 F. App'x 431 (3d Cir. 2019). *Aruanno* discusses the exhaustion requirement of the PLRA and its application to SVPs. *Id.* at 434 n.5. That is not the issue in this case.

**ORDERED** that the Clerk of the Court send a copy of this Memorandum Opinion and Order to Plaintiff at the address on file.

/s/ Kevin McNulty
_____
**Kevin McNulty, U.S.D.J.**